1
2
3
4

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

5
6

DELADDO FERNANDO LECKY,

7
                            Petitioner,

8       v.

9       PAMELA BONDI, ET AL,

10                          Respondent.

Case No. 2:25-cv-02637-TLF

ORDER GRANTING IN PART
PETITIONER'S WRIT OF HABEAS
CORPUS

11
12

## I.    Introduction

13

Petitioner Deladdo Fernando Lecky, a citizen, and native of Jamaica, is detained

14      by U.S. Immigration and Customs Enforcement ("ICE") at the Northwest ICE Processing

15      Center ("NWIPC") in Tacoma, Washington. Dkt. 2, Petition. He has been detained since

16      September 17, 2025. *Id*. at 5. On May 21, 2015, an Immigration Judge granted

17      withholding of removal to Jamaica. *Id*. at 3. Petitioner was later released on an Order of

18      Supervision ("OSUP"). *Id*. He complied with this order for ten years, until his re-

19      detention. *Id*.

20      On December 19, 2025, petitioner, through counsel, filed a habeas corpus

21      petitioner under 28 U.S.C. § 2241, alleging (1) a violation of his Fifth Amendment due

22      process rights because there is no significant likelihood petitioner will be removed in the

23      reasonable foreseeable future and because he was re-detained without a pre-

24      deprivation hearing before a neutral decision-maker to assess whether re-detention was

25

ORDER GRANTING IN PART PETITIONER'S WRIT OF
HABEAS CORPUS - 1

justified; (2) respondents violated their own regulations in detaining petitioner, rendering

his detention unlawful; (3) third country removal without meaningful notice and

opportunity to respond violates the Fifth Amendment's Due Process Clause, the INA,

implementing regulations, the Convention Against Torture, and the Administrative

Procedure Act; and (4) the third-country removal program is punitive, in violation of the

Fifth and Eighth Amendments. Dkt 2, Petitioner 22-23.

Petitioner seeks: (1) immediate release; (2) an order preventing re-detention

unless the responds establish by clear and convincing evidence at a hearing before a

neutral decision maker that petitioner is a flight risk or a danger to the community,

based on changed circumstances after their most recent release, together with

additional safeguards; (3) an order preventing removal to a third country without notice

and meaningful opportunity to respond; and (4) an order barring removal to any third

country under respondents' allegedly punitive third-country removal policy.

The government has filed a return memorandum, arguing: petitioner's detention

is lawful under 8 U.S.C. § 1231(a)(6) pending his removal; existing Department of

Homeland Security ("DHS") policy provides adequate due process protections regarding

third-country removals; and the requested relief regarding third-country removals is not

ripe and may not be adjudicated because petitioner is a member of the class in *D.V.D.*

*v. U.S. Dep't of Homeland Sec.*, No. 25-CV-10676-BEM, 2025 WL 1453640 (D. Mass.

May 21, 2025). Dkt. 11, Government Response. Petitioner has filed a reply. Dkt. 14.

The parties unanimously consented to the jurisdiction of a Magistrate Judge. Dkt.

5.

For the reasons discussed below, the Court GRANTS the federal habeas petition (Dkt. 6) in part. The government is ordered to release the petitioner from custody within 24 hours of this Order, under the conditions of his previous release and petitioner may not be re-detained until after a pre-deprivation hearing is held to determine whether detention is appropriate.

## II.    Background

On or about August 16, 2009, petitioner legally entered the United States on a K-1 visa to marry his U.S. citizen fiancé and was authorized to stay until November 14, 2009. Dkt. 12, Declaration of Deportation Officer Sheldon Benjamin ("Benjamin Decl.") ¶ 4. Petitioner has since remained in the United States. *Id.* According to petitioner, they were married but then separated. Dkt. 13, Wong Decl., Ex. 2, Record of Deportable/Inadmissible Alien at 4.

On or about April 9, 2012, petitioner was convicted in the Circuit Court for Baltimore City for the offense of Controlled Dangerous Substance Distribution of a Narcotic (marijuana) and sentenced to five years of probation. Wong Declaration, Dkt. 13, Ex.1, Notice to Appear at 4; Dkt. 12, Benjamin Decl. ¶ 5. On November 21, 2013, petitioner was convicted in Baltimore County, Maryland for driving without a license and sentenced to 60 days in jail (which was suspended). Dkt. 13, Wong Decl., Ex. 2 at 4. On May 25, 2014, he was convicted for driving without a license and sentenced to fines. *Id*. On October 14, 2014, petitioner again was convicted in Baltimore City, Maryland for driving without a license, and was sentenced to 60 days in jail, with 53 days suspended. *Id*.

On October 20, 2014, petitioner was apprehended by the ICE Enforcement and Removal Operations ("ERO") Criminal Apprehension Program ("CAP") at the Baltimore City Jail, the same day after he was released from jail. Dkt. 12, Benjamin Decl. ¶ 6; Dkt. 13, Wong Decl., Ex 2 at 4.

On October 21, 2015, petitioner was placed in removal proceedings by the issuance of a Notice to Appear ("NTA"), charging him as removable under INA § 237(a)(1)(B) and 237(a)(2)(B)(i). Dkt. 12, Benjamin Decl. ¶ 7. On December 8, 2014, petitioner filed a I-589 Application for Asylum, Asylum Withholding and Withholding Convention Against Torture. Dkt. 13, Wong Decl., Ex 2 at 4. On April 21, 2015, an Immigration Judge denied petitioner's asylum request, ordered him removed to Jamaica, but granted his petition for withholding of removal to Jamaica. Dkt. 2., Ex. A, Order of Withholding. On June 12, 2015, he was released under an OSUP. Dkt. 13, Wong Decl., Ex. 4, Order of Supervision; Dkt. 12, Benjamin Decl. ¶ 11.

Respondents contend that "[o]n or about February 22, 2016, ERO became aware that Petitioner has been arrested for assault" and "[o]n or about July 27, 2018, when Petitioner reported for a check in, ERO became aware Petitioner had recent traffic citations and probation violations," but these incidents are reflected nowhere in the A-file exhibits attached to the Declaration of Assistant United States Attorney Jennifer Wong. *See* Dkt. 13; Dkt. 12, Benjamin Decl. ¶¶ 11-13.

Respondents also assert that petitioner failed to report for a check in via an ICE check-in kiosk on three separate occasions since April 20, 2022: (1) May 24, 2023; (2) August 2, 2024; (3) September 6, 2024. Dkt. 12, Benjamin Decl. ¶¶ 14-17. Yet the record contains no evidence that petitioner was warned, reprimanded, or informed that

- 4

1    these alleged failures could result in re-detention or revocation of his Order of

2    Supervision. He has remained out of ICE custody on an OSUP since June 12, 2015.

3    Dkt. 13, Wong Decl., Ex. 4.

4        Prior to the revocation of release, petitioner resided in Baltimore with five young

5    children. Dkt. 2 at 6. On September 17, 2025, petitioner was arrested at Baltimore ISAP

6    (ICE supervision office) "without incident" when he reported for a check in. Dkt. 13,

7    Wong Decl., Ex. 2 at 4.[1]

8        The same day, ICE issued a Notice of Revocation and Release, and re-detained

9    him. Dkt. 2, Ex. B, Notice of Revocation and Release. The notice did not specify the

10   country to which ICE intended to remove petitioner. *Id*. ("At this time, ICE is taking steps

11   to remove you to _____"; "This letter is to inform you that U.S. Immigration and

12   Customs Enforcement (ICE) intends to remove you to _____.").

13       On September 23, 2025, ICE transported petitioner from Baltimore to NWIPC.

14   Dkt. 12, Benjamin Decl. ¶ 20. On September 25, 2025 – after petitioner had been

15   detained — ICE identified a possible third country removal. Dkt. 12, Benjamin Decl. ¶

16   21. Almost two months later, on November 17, 2025, ERO Tacoma prepared a third-

17   country removal notice for Mexico. Dkt. 12, Benjamin Decl. ¶ 22; Dkt. 13, Wong Decl.,

18   Ex. 4 Notice of Removal. On November 20, 2025, it was decided he would not be

19   removed to Mexico. Dkt. 12, Benjamin Decl. ¶ 23.

20       Respondents assert, "ERO Tacoma intends to pursue available third country

21   removal options. When potential third country removal options are identified and

22

23   ------

[1] Officer Benjamin's Declaration states, "ERO Baltimore officers located and arrested petitioner to execute
24   his [2015] final order of removal." Dkt. 12, Benjamin Decl. ¶ 18. But he was detained during a routine
     check-in. Dkt. 13, Wong Decl., Ex. 2 at 4.

25

1   directed, notice will be given to petitioner, and he will be provided an opportunity to

2   claim fear related to the third country notice provided." Dkt. 12, Benjamin Decl. ¶ 23.

### III.    Discussion

4       Federal courts have authority to grant writs of habeas corpus to an individual in

5   custody if such custody is in "violation of the Constitution or laws or treaties of the

6   United States[.]" 28 U.S.C. § 2241(c)(3).

7       The Framers of the U.S. Constitution considered the writ of habeas corpus to be

8   so critical to the protection of individual liberty that they identified specific and limited

9   grounds for suspension of the writ. *Boumediene v. Bush*, 553 U.S. 723, 743 (2008). The

10  writ of habeas corpus "protects the rights of the detained by affirming the duty and

11  authority of the Judiciary to call the jailer to account." *Id*. at 745. The Court has power to

12  conduct meaningful review of the cause for detention and the executive's power to

13  detain, and to issue an equitable remedy under the writ of habeas corpus that includes

14  release of the prisoner, and the means to correct errors in the government's process. *Id*.

15  at 779-787. "The writ of habeas corpus is the fundamental instrument for safeguarding

16  individual freedom against arbitrary and lawless state action. Its preeminent role is

17  recognized by the admonition in the Constitution that: 'the Privilege of the Writ of

18  Habeas Corpus shall not be suspended. . .' U.S. Const., Art. 1, s 9, cl. 2. The scope and

19  flexibility of the writ — its capacity to reach all manner of illegal detention — its ability to

20  cut through barriers of form and procedural mazes — have always been emphasized

21  and jealously guarded by courts and lawmakers. The very nature of the writ demands

22  that it be administered with the initiative and flexibility essential to insure that

23

24

25

miscarriages of justice within its reach are surfaced and corrected." *Harris v. Nelson*, 394 U.S. 286, 291 (1969).

## A. Jurisdiction and ICE Regulatory Framework

The Court has subject matter jurisdiction to determine whether ICE complied with its own regulations and whether petitioner's detention violates the Constitution. At any time, the Court may raise the issue of its own jurisdiction. *Arbaugh v. Y&H Corp.*, 546 U.S. 500, 514 (2006) (holding that courts "have an independent obligation to determine whether subject-matter jurisdiction exists, even in the absence of a challenge from any party."). Although 8 U.S.C. § 1252(g) limits jurisdiction over challenges to the execution of removal orders, petitioner does not seek to enjoin or challenge removal itself. Rather, he challenges the lawfulness of his detention following revocation of an Order of Supervision. See *Ceesay v. Kurzdorfer*, 781 F. Supp. 3d 137 (W.D.N.Y. 2025) (discussing and distinguishing *Singh v. Napolitano*, 500 F. App'x 50 (2d Cir. 2012) and *Tazu v. Att'y Gen. U.S.*, 975 F.3d 292 (3d Cir. 2020)).

## B. Statutory Framework

The authority of ICE to detain noncitizens under federal law, 8 U.S.C. § 1231, directs the Attorney General of the United States to affect the removal of any noncitizen from this country within 90 days of any order of removal. 8 U.S.C. § 1231(a)(1).

Once "removal is no longer reasonably foreseeable, continued detention is no longer authorized by statute," the noncitizen must be released. *Zadvydas v. Davis*, 533 U.S. 678, 699 (2001). Upon release, a noncitizen subject to a final order of removal must comply with certain conditions of release. 8 U.S.C. § 1231(a)(3), (6).

The regulation governing revocation of petitioner's release is § 241.13(i), which specifically applies to noncitizens whom the government has determined "there is no significant likelihood . . . [that they] can be removed in the reasonably foreseeable future." 8 C.F.R. § 241.13(b)(1).

The government's discretion to revoke the release of a noncitizen whose removal was previously found to be unlikely in the reasonably foreseeable future is limited. *See Tran v. Bondi*, No. 2:25-CV-02335-DGE-TLF, 2025 WL 3725677, at *7 (W.D. Wash. Dec. 24, 2025). A noncitizen "who violates any of the conditions of release may be returned to custody." 8 C.F.R. § 214.13(i)(1). Under § 241.13(i)(1), absent a violation of an Order of Supervision, the government may not return a noncitizen into custody.

The government may also "revoke an alien's release . . . if, on account of changed circumstances, the Service determines that there is a significant likelihood that the alien may be removed in the reasonably foreseeable future." 8 C.F.R. § 214.13(i)(2). Under § 241.13(i)(2), without the government determining, on account of changed circumstances, that a noncitizen may be removed in the reasonably foreseeable future, a noncitizen may not be returned to custody. *Makuey v. Scott*, No. 2:25-CV-02135-DGE-BAT, 2025 WL 3640900, at *3 (W.D. Wash. Dec. 16, 2025).

Even under circumstances in which revocation is allowed by the regulation, ICE must provide notice and an opportunity to be heard, including evaluation of contested facts and a determination of whether revocation is warranted. 8 C.F.R. § 241.13(i)(3). The decision cannot be arbitrary but is governed by the factors laid out in 8 C.F.R. § 241.13(f). ICE's discretion is therefore narrowly constrained.

Respondents do not dispute that the governing post-order detention regulations apply in this case, nor do they contend that compliance with those regulations is optional. *See generally* Dkt. 11. Instead, respondents assert that "ICE did not violate regulations concerning OSUP revocations when arresting Petitioner," arguing that "[n]either the statute nor the regulations require a pre-deprivation hearing before revoking an OSUP for the purpose of executing a removal order." Dkt. 11 at 12. Respondents also contend that requiring a pre-deprivation hearing would cause "significant delay in executing a removal order," allegedly conflicting with the government's interest in effectuating removals while referring to an arrest and alleged probation violations — that are not in the record — as further justification. *Id*. The government also states, "Petitioner identifies no regulation that was violated and no notice requirement applicable to his circumstances that was not satisfied." *Id*. at 16.

The respondents' arguments mischaracterize the regulatory framework. The Notice of Revocation explicitly states that re-detention was based on "a determination that there are changed circumstances" in petitioner's case and cites 8 C.F.R. §§ 241.13, 241.4.[2] Dkt. 2, Ex. B.

Respondents suggest that revocation was permissible under 8 C.F.R. § 241.13(i)(1), citing a prior arrest from 2016, traffic citations from 2018, and three alleged failures to report over a decade; they conclude that "ICE acted well within its statutory

---

[2] § 241.4 applies to noncitizens who have been ordered removed in general, while § 241.13 specifically applies to noncitizens whom the government has determined "there is no significant likelihood . . . [that they] can be removed in the reasonably foreseeable future." 8 C.F.R. § 241.4(b)(4); 8 C.F.R. § 241.13(b)(1) ("Section 241.4 shall continue to govern detention of aliens under a final order of removal . . . . . . .unless the Service makes a determination under this section that there is no likelihood of removal in the reasonably foreseeable future."). Here, the government already decided there was no likelihood of removal for Mr. Lecky and allowed him to be released on an OSUP for 10 years. Thus, any revocation must fall under § 241.13.

authority in detaining Petitioner." Dkt. 11 at 16. But in their response, respondents do

not cite to either provision or provide any evidence in the record for their contention.

Instead, they shift position and suggest that detention is authorized under 8 U.S.C. §

1231(a)(6),[3] without identifying which statutory predicate applies or how it justifies

revocation of an existing Order of Supervision. Dkt. 11 at 12.

The Notice of Revocation states that petitioner "will promptly be afforded an

informal interview at which [he] will be given an opportunity to respond to the reasons

for the revocation," tracking the language of 8 C.F.R. § 241.13(i)(3). Dkt. 2, Ex. B. Yet

respondents point to no documentation of any such interview (even if

petitioner were interviewed, this would not be consistent with due process because

there was not an opportunity to be heard in a meaningful time or manner), no revocation

custody review, and no evaluation of contested facts as required by the regulation. *See*

Dkt. 12, Benjamin Decl.

Nothing in the record suggests that petitioner was afforded the procedures

required by the regulations governing revocation, and petitioner contends he received

no informal interview, no opportunity to respond, and no advisement of his right to

request a review of the detention. Dkt. 2 at 23.

The absence of any meaningful review underscores that respondents did not

comply with the procedures. ICE had determined petitioner's deportation was not

reasonably foreseeable and released petitioner under an OSUP in 2015, and the

agency may revoke that release only in accordance with the narrow and specific criteria

---

[3] Because the Court finds that petitioner's detention violates the Due Process Clause, and thus affords relief on that basis, it does not reach petitioner's claims under 8 U.S.C. § 1231(a) and *Zadvydas v. Davis*, 533 U.S. 678, 699 (2001). Even so, the Court notes the government has not provided petitioner sufficient process or notice to justify a detention on the basis of 8 U.S.C. § 1231(a)(6).

set forth in § 241.13(i). The Court holds that ICE violated its own regulations in re-detaining petitioner without the required procedures.

### C. Petitioner's Re-Detention and Fifth Amendment Due Process

The Due Process Clause of the Fifth Amendment prohibits the federal government from depriving any person of "life, liberty, or property, without due process of law[.]" U.S. Const. Amend. V. The right to due process extends to "all 'persons' within the United States, including [non-citizens], whether their presence here is lawful, unlawful, temporary, or permanent." *Zadvydas v. Davis*, 533 U.S. 678, 693 (2001).

"Procedural due process imposes constraints on governmental decisions which deprive individuals of 'liberty' or 'property' interests within the meaning of the Due Process Clause of the Fifth or Fourteenth Amendment." *Mathews v. Eldridge,* 424 U.S. 319, 332 (1976). Due process thus guarantees notice and an individualized hearing before a neutral decisionmaker to assess danger or flight risk *before* the revocation of an individual's release. *Goldberg v. Kelly*, 397 U.S. 254, 267 (1970) ("The fundamental requisite of due process of law is the opportunity to be heard . . . . at a meaningful time in a meaningful manner." (citation omitted); *Morrissey v. Brewer*, 408 U.S. 471, 485 (1972) (requiring a "preliminary hearing to determine whether there is probable cause or reasonable ground to believe that the arrested parolee has committed . . . a violation of parole conditions" and that such determination be made "by someone not directly involved in the case[.]") (citation omitted)); *see also Vitek v. Jones*, 445 U.S. 480 (1980) (applying *Morrissey* to civil commitments).

Determining whether a particular administrative procedure satisfies due process "generally requires consideration of three distinct factors: First, the private interest that

will be affected by the official action; second, the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards; and finally, the government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail." *Mathews*, 424 U.S. at 335; *E.A. T.-B. v. Wamsley*, 795 F. Supp. 3d 1316, 1320–21. (W.D. Wash. 2025).

The Ninth Circuit in *Rodriguez Diaz v. Garland* assumed without deciding that the *Mathews* three-part test applies in "the immigration detention context." 53 F.4th 1189, 1206-07 (9th Cir. 2022). Courts in this district have repeatedly held that due process requires a hearing before the government revokes a person's liberty, particularly where the individual has lived in the community under some supervision. *E.A. T.-B. v. Wamsley*, 795 F. Supp. at 1321-22, n. 4; *Ledesma Gonzalez v. Bostock*, No. 2:25-CV-01404-JNW-GJL, 2025 WL 2841574, at *7-9 (W.D. Wash. Oct. 7, 2025); *Kumar v. Wamsley*, No. 2:25-CV-01772-JHC-BAT, 2025 WL 2677089, at *2-4 (W.D. Wash. Sept. 17, 2025); *Y.M.M. v. Wamsley*, No. 2:25-CV-02075-TMC, 2025 WL 3101782, at *2 (W.D. Wash. Nov. 6, 2025); *P.T. v. Hermosillo*, No. C25- 2249-KKE, 2025 WL 3294988, at *4 (W.D. Wash. Nov. 26, 2025); *Francois v. Wamsley*, No. 2:25-cv-02122-RSM-GJL, 2025 WL 3496557, at *4 (W.D. Wash. Dec. 5, 2025); *Ramirez Tesara v. Wamsley*, No. 2:25-CV-01723-MJP-TLF, 2025 WL 2637663, at *2-5 (W.D. Wash. Sept. 12, 2025).

The Court will consider each *Mathews* factor to determine whether petitioner's arrest and detention comport with constitutional due process requirements, and what would be required for adequate due process protections.

### 1. Private Interest

Under the first *Mathews* factor, the Court determines the private interest to be affected by the official action. Petitioner's interest in not being detained is "the most elemental of liberty interests[.]" *Hamdi v. Rumsfeld,* 542 U.S. 507, 529 (2004). "Freedom from bodily restraint has always been at the core of the liberty protected by the Due Process Clause from arbitrary governmental action." *Foucha v. Louisiana*, 504 U.S. 71, 80 (1992); *see also Zadvyda*s, 533 U.S. at 696 (finding that a non-citizen has a liberty interest "strong enough" to challenge "indefinite and potentially permanent" immigration detention). A released individual had an "opportunity 'to form the [ ] enduring attachments of normal life'" and thus has a heightened liberty interest, such as those which led the Supreme Court in *Morrisey* to impose due process requirements on parolees where the state seeks to revoke parole. *Carballo v. Andrews*, No. CV25-978-KES-EPG (HC), 2025 WL 2381464, at *4 (E.D. Cal. Aug. 15, 2025) (quoting *Morrissey,* 408 U.S. at 482).

When petitioner was released from ICE custody in 2015 on an Order of Supervision, he "took with him a liberty interest which is entitled to the full protections of the [D]ue [P]rocess [C]lause." *Ramirez Tesara,* 2025 WL 2637663, at *3. The fact the government allowed petitioner to remain in the community for over ten years after issuing an Order of Supervision on Jun 12, 2015 only strengthens this interest. *Tran v. Bondi*, 2025 WL 3725677, at *11 (citing *Dejesus v. Bostock*, No. 25-CV-01427-JHC-TLF, 2025 WL 3268002, at *3 (W.D. Wash. Nov. 24, 2025)). Therefore, the first *Mathews* factor weighs in petitioner's favor.

1

### 2. Risk of Erroneous Deprivation

The second *Mathews* factor examines both the risk of an erroneous deprivation of liberty under the procedures used and the probable value of additional or substitute procedural safeguards. *Mathews,* 24 U.S. at 335.

It is undisputed that there has been no finding that petitioner poses a danger to the community or is a flight risk. *See generally* Dkt. 2; Dkt. 11. Respondents have not rebutted petitioner's contention that, at the time of his arrest on September 17, 2025, he was not provided with notice of the allegations against him or any opportunity to respond prior to, during, or immediately after his arrest. There was no neutral decisionmaker, no meaningful notice, and no meaningful opportunity to contest ICE's assertions before petitioner's detention. The record demonstrates that respondents had no factual basis to support the cited provisions at the time of re-detention.

Respondents rely on 8 U.S.C. § 1231(a) as the basis for revocation of release. Yet the Notice of Revocation asserts only that "there are changed circumstances in [petitioner's] file." Dkt. 2, Ex. B.   Respondents appear to suggest that revocation was permissible under 8 C.F.R. § 241.13(i)(1) but have provided no evidence on the record. The first documented step toward pursuing removal after revocation occurred on November 17, 2025—sixty days *after* petitioner's release was revoked—when ERO Tacoma prepared a third-country removal notice for Mexico, which was ultimately not enforced. Dkt. 12, Benjamin Decl. ¶ 22.

As of the present date, the record contains no evidence indicating when, or if, petitioner will be removed to a third country. As the Court in *Tran* explained, "undeniably. . . . Respondents were not authorized to revoke Petitioner's release under

8 C.F.R. § 241.13(i)(2) because on that date they had no basis to conclude the

existence of changed circumstances indicating there was a significant likelihood

Petitioner would be removed in the reasonably foreseeable future." *Tran v. Bondi*, No.

2:25-cv-02335-DGE-TLF, at *12. Respondents' only proffered justification is a

declaration stating that "ERO Tacoma intends to pursue available third country removal

options" and that notice will be provided if such options are later identified. Dkt. 12,

Benjamin Decl. ¶ 24. That statement reflects a future possibility, not a present changed

circumstance. Respondents have offered no evidence that any change had occurred at

the time of revocation sufficient to authorize re-detention.

Because the government did not follow its own regulations, the probable value of

additional or substitute procedural safeguards is high, as it is undeniable that the risk of

an erroneous deprivation would decrease if petitioner had received meaningful notice,

at a meaningful time, of the specific basis for his re-detention and

a meaningful opportunity to be heard before a neutral decisionmaker.

Even if the government believes it has a lawful basis for detention, that belief

"does not eliminate [its] obligation to effectuate the detention in a manner that comports

with due process." *E.A. T.-B.*, 795 F. Supp at 1322.*; see, e.g.*, *Vargas v. Jennings*, No.

20-cv-5785-PJH, 2020 WL 5517277, at *2 (N.D. Cal. Sep. 14, 2020) (noting that

respondents' argument that petitioner is not entitled by statute or regulation to a pre-

arrest hearing does not bear on whether a hearing is required for procedural due

process).

The Court holds that detaining petitioner on September 17, 2025, and continuing to

detain him without properly applying 8 C.F.R. § 241.13, has created a significant risk of

an erroneous deprivation of petitioner's liberty interest. The

second *Mathews* factor weighs in petitioner's favor.

### 3. Government's Interest

The third *Mathews* factor evaluates the government's interest, including the

function involved and the fiscal and administrative burdens of additional procedural

requirements.

The government has a legitimate interest in ensuring that a noncitizen subject to

a final order of removal appears when necessary to facilitate removal and in protecting

the community from danger. *Zadvydas v. Davis*, 533 U.S. 678, 690 (2001). But those

interests are already contemplated and adequately protected by the narrow authority

to revoke release set forth in in 8 C.F.R. § 241.13(i). *Tran v. Bondi*, 2025

WL 3725677, at *13.  Had the government provided meaningful pre-deprivation

process, petitioner could have received sufficient notice to secure counsel (or prepare

to represent himself) and to gather evidence to rebut the government's claim of

"changed circumstances."

Accordingly, the Court holds that the government's interest in re-detaining a

noncitizen, who has not been notified of the alleged violated the terms of their release

nor whose removal has not been established to be likely to occur in the reasonably

foreseeable future, without a pre-detention hearing or some other pre-detention

process, is low. *See Wamsley*, 2025 WL 2402130, at *5 ("the Government's interest in

re-detaining non-citizens previously released without a hearing is low") (citing *Ortega v.*

*Bonnar*, 415 F. Supp. 3d 963, 970 (N.D. Cal. 2019)). While a pre-detention process

would impose some administrative burden, that burden is minimal when weighed

against the fundamental liberty interest at stake and the high

risk of erroneous deprivation. Providing effectively no pre-deprivation process, as ICE

did here, is constitutionally insufficient.

**D. Third Country Removal**

Petitioner's remaining claims challenge the legality of his potential removal to a

third country under the Fifth Amendment, the Eighth Amendment, 8 U.S.C. § 1231, the

Convention Against Torture, the Administrative Procedure Act, and the relevant

implementing regulations. *See* Dkt.19, 15-19.

**1. Ripeness and D.V.D. Class Membership**

Respondents first argue that petitioner's third-country removal claims are not ripe

because ICE has not yet designated a third country. Dkt. 11 at 13. They assert that "ICE

anticipates that they will be able to find a suitable third country allowing for Petitioner's

removal" and that petitioner will then be provided notice and an opportunity to express

fear. *Id*. at 12.

But ICE has designated at least one third country (Mexico) and subsequently

abandoned that option. Dkt. 12, Benjamin Decl. ¶ ¶ 21-23. That ICE selected, then

declined to pursue, a third country demonstrates that third-country removal is not

speculative, but an active and ongoing possibility. The harm petitioner seeks to avoid —

summary transfer to a third country without notice or meaningful process — cannot be

remedied once removal occurs. *Louangmility v. Noem,* No. 25-CV-2502-JES-MSB,

2025 WL 2881578, at *4 (S.D. Cal. Oct. 9, 2025) (citation omitted)); *see also Nguyen v.*

*Scott,* 796 F. Supp. 3d 703, 737 (W.D. Wash. 2025). ICE has provided no date of

removal and no timeline for execution, circumstances courts have repeatedly found

sufficient to render third-country removal claims ripe for review. *See Nguyen* 796 F.

Supp. 3d at 721-23; *Abubaka v. Bondi*, No. C25-1889RSL, 2025 WL 3204369, at *10-12

(W.D. Wash. Nov. 17, 2025). Accordingly, petitioner's claims are ripe.

Respondents next contend that this Court lacks authority to adjudicate

petitioner's claims because he is a member of the class certified in *D.V.D. v. U.S. Dep't*

*of Homeland Security*, No. 25-CV-10676-BEM, 2025 WL 1453640 (D. Mass. May 21,

2025). Dkt. 11 at 14. According to respondents, principles of comity and docket control

preclude parallel litigation of identical claims. *Id*.

In *Nguyen*, the Court held that the *D.V.D.* class certification order does not bar

adjudication of individual habeas petitions challenging third-country removal and that

the Supreme Court's emergency stay order in *D.V.D.* provides no merits guidance and

does not divest district courts of jurisdiction. *Nguyen*, 796 F. Supp. 3d at 729-30. The

courts in *Abubaka* and *Baltodano* expressly adopted the same reasoning. *Abubaka*,

2025 WL 3204369, at *3; *Baltodano*, No. C25-1958RSL, 2025 WL 2987766, at *2-3

(W.D. Wash. Oct. 23, 2025). The Court declines to exercise its discretion to dismiss

petitioner's claims. *See Pride v. Correa*, 719 F.3d 1130, 1137 (9th Cir. 2013) (rejecting

defendants' "argument that a discrete, individual claim for injunctive relief may be

delayed because a pending class action seeks systemic reform relating to the same

general subject matter.").

## 2. Due Process and Current Third-Country Removal

Due Process forbids last-minute designation of a new removal country when the

noncitizen has not been given a fair opportunity to address the risks of harms in that

country. *See Najjar v. Lynch*, 630 F. App'x 724 (9th Cir. 2016) (citing *Andriasian v. INS*,

180 F.3d 1033, 1041 (9th Cir. 1999)); *El Himri v. Ashcroft*, 378 F.3d 932, 938 (9th Cir. 2004); *Sadychov v. Holder*, 565 F. App'x 648, 651 (9th Cir. 2014).

Petitioner challenges the July 9, 2025 ICE memorandum that allegedly authorizes removal to a country not designated in the removal order without reopening proceedings, without advance notice, and without affording a meaningful opportunity to respond. Dkt. 6 at 12–13. Consistent with Ninth Circuit precedent, Courts have repeatedly found that third-country removal without meaningful notice and an opportunity to be heard is likely unconstitutional. *See Nguyen*, 796 F. Supp. 3d at 728; *J.R. v. Bostock*, 2025 WL 1810210, at *3 (W.D. Wash. June 30, 2025); *Phetsadakone v. Scott*, 2025 WL 2579569, at *4 (W.D. Wash. Sept. 5, 2025); *Baltodano*, 2025 WL 2987766, at *3–4. In *Abubaka*, in which the Court considered a final ruling, it reaffirmed these principles and held that ICE may not remove a noncitizen to a third country without notice and an opportunity to respond. *Abubaka*, 2025 WL 3204369, at *9.

Respondents assert that ICE will provide notice and an opportunity to express fear once a third country is selected and the Due Process "relief petitioner seeks is already addressed by existing DHS policy." Dkt. 11 at 12–13. The government argues, ICE will provide notice of removal to a third country once a country is identified, at which point petitioner may assert a fear claim and be referred to USCIS for an interview. *Id*. It also asserts that ICE has demonstrated compliance with its procedures by affording petitioner notice and an opportunity to respond consistent with DHS policy. Dkt. 14 at 13.

Due process requires notice and a meaningful opportunity to be heard before removal decisions are effectuated. *Goldberg v. Kelly*, 397 U.S. 254, 267 (1970) ("The

fundamental requisite of due process of law is the opportunity to be heard . . . . at a meaningful time in a meaningful manner." (citation omitted)). The Court holds that ICE violated due process. ICE selected Mexico as a third country and detained petitioner in anticipation of removal without first affording him the interview and procedural safeguards the government now claims are sufficient. As a result, petitioner was taken into and held in custody without the process the Constitution requires. The relief petitioner seeks of advance notice and a meaningful opportunity to respond in reopened proceedings is therefore appropriate.

The Court orders that respondents are prohibited from removing petitioner to any third country without first providing notice and a meaningful opportunity to respond in reopened proceedings.

### 3. Punitive Nature of Respondents' Third-Country Removal Policy

Petitioner asks the Court to declare respondents' third-country removal program is unconstitutionally punitive under all applications. Dkt. 2 at 27. The prospect that he could still be subjected to a third-party country transfer for the purpose of imprisonment or other punitive measures, even though he is held under civil immigration authority, raises serious constitutional concerns. Yet petitioner offers no declarations, exhibits, or other evidentiary materials substantiating these assertions. The New York Times article cited in the petition is dated June 25, 2025. Dkt. 2 at 19 (citing Edward Wong, et al., Inside the Global Deal-Making Behind Trump's Mass Deportations, N.Y. Times (June 25, 2025), https://www.nytimes.com/2025/06/25/us/politics/trump-immigrants-deportations.html.). Immigration-enforcement policies and practices may evolve. The allegations made by petitioner lack support contemporaneous with this litigation, and the

record of a June 2025 New York Times article is insufficient to permit factual findings about the purpose, operation, and effects of the current third-country removal immigration policies and practices. Respondents do not address the merits of petitioner's punitive intent claim or provide supplemental evidence related to the government's current third-country removal policies or practices. Therefore, the Court declines to make such a broad ruling on the limited record.

The relief granted in this Order requiring notice and a meaningful opportunity to be heard will allow petitioner to challenge any particular proposed third-country removal where he can proffer evidence into the record showing punitive purpose of then-existing policies or practices, a risk of imprisonment, or other harm at a later time.

### IV.    Conclusion

Petitioner's re-detention occurred without meaningful notice, without a meaningful opportunity to be heard, and without evidence of relevant violations of his OSUP or changed circumstances under the agency's regulation, that would allow for revocation of his Order of Supervision. This violated ICE's regulations and the Due Process Clause of the Fifth Amendment. Petitioner is therefore in custody in violation of the Constitution and laws of the United States. 28 U.S.C. § 2241(c). The petition for writ of habeas corpus (Dkt. 1) is **GRANTED** in part.

It is **ORDERED**:

1. The government shall release petitioner from custody within 24 hours of the filing of this Order, under the conditions of his June 12, 2015 OSUP;

2. Prior to any future detention by ICE, petitioner is entitled to notice and a pre-deprivation hearing at which a neutral decision-maker must determine whether

there is any valid basis for their detention—i.e., whether he poses a danger to the community or a flight risk that can only be mitigated through detention. At such a hearing, the government bears the burden of establishing by clear and convincing evidence that a valid basis exists for his detention. *Singh v. Holder*, 638 F.3d 1196, 1203 (9th Cir. 2011) ("the government must prove by clear and convincing evidence that an alien is a flight risk or a danger to the community to justify denial of bond."); *Pablo Sequen v. Albarran,* No. 25-CV-06487-PCP, 2025 WL 2935630, at *13–14 (N.D. Cal. Oct. 15, 2025);

3. The evidence the government presented in this case is insufficient to meet the requirements of 8 C.F.R. §§ 241.13(i)(2), 241.13(i)(2); and

4. No later than two days after petitioner's release (for example, if petitioner is released on a Monday, then the government shall file the declaration no later than Wednesday; or, if petitioner is released on a Friday, then the declaration shall be filed no later than the following Monday) the government must file with the Court a declaration confirming the date and time petitioner has been released from custody.

IT IS SO ORDERED.


Theresa L. Fricke
United States Magistrate Judge

- 22